In the matter of Arch P. PETTIT and Ida Marie Pettit, d/b/a Archangel Corp., La Pettit Roche, Quapaw Quarters Shops and Ener-Kleen, Debtors.

Thomas COYNE and Lynn Janssen, Petitioners,

v.

ARKANSAS KITCHEN CENTER, INC., Arch P. Pettit and Ida Marie Pettit, Respondents.

Bankruptcy No. LR–80–0627.
Adv. No. AP 81–245.

United States Bankruptcy Court,
E. D. Arkansas, W. D.

July 13, 1981.

Thomas P. Thrash, Little Rock, Ark., for petitioners.

Wright, Lindsey & Jennings, Little Rock, Ark., for the Pettits.

Edward O. Moody, Little Rock, Ark., for Arkansas Kitchen Center, Inc.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL DECREE AND JUDGMENT ENJOINING RESPONDENT ARKANSAS KITCHEN CENTER, INC., FROM FURTHER PROSECUTING STATE COURT ACTION AND BARRING CLAIM OF RESPONDENT ARKANSAS KITCHEN CENTER, INC., AGAINST THE DEBTORS

DENNIS J. STEWART, Bankruptcy Judge.

The petitioners, former officers or employees of La Pettit Roche, one of the debt-

ors in these chapter 11 proceedings, have brought this action to restrain and enjoin the respondent Arkansas Kitchen Center, Inc., from further prosecution of an action against them in the Chancery Court of Pulaski County, Arkansas. It is the petitioners' contention that the indebtedness sued upon is one of the debtor corporation rather than their own personal and individual debt. Alternatively, they contend that they are "at most" liable as codebtors and that the bankruptcy court should enjoin the further prosecution of the state court proceedings under the authority of § 105 of the Bankruptcy Code.[1]

A plenary evidentiary hearing was conducted on the factual issues thereby raised on May 8, 1981.[2] Based on the evidence then adduced, this court has concluded that the debt which is the subject of the state court proceedings is one of the debtor corporation and not of the plaintiffs. Therefore, prosecution of the state court action is barred by the terms of the automatic stay, § 362 of the Bankruptcy Code.

I

FINDINGS OF FACT

In December 1980, when dealings began between the plaintiffs and Tom Humphries, president and managing officer of Arkansas Kitchen Center, Inc., the plaintiffs were the owners of their own corporation, Devark. They had commenced discussions and negotiations with Arch P. Pettit for making improvements in a building located at 313 Main Street in Little Rock, Arkansas, which was owned by Mr. Pettit, and for transferring that building to a corporation then to be formed in the future, La Pettit Roche. Thomas Coyne was to be the president of La Pettit Roche. La Pettit Roche, in turn,

was to be wholly owned by Archangel Corporation, which was to be wholly owned by Arch P. Pettit. The petitioners, in December 1979, initially requested that the Arkansas Kitchen Center make certain improvements in a kitchen and a bathroom on the premises. They stated to Mr. Humphries that they had intentions of creating some condominiums in the building, but, at the outset, they apparently did not reveal to him the role of Arch P. Pettit nor that of the debtor corporations. Pursuant to this initial request, some $3,562.00 worth of work was done which was fully paid for out of the funds which Arch P. Pettit had placed in Devark Corporation for this purpose.

In January 1980, as scheduled, La Pettit Roche came into existence as a wholly owned subsidiary of the Archangel Corporation which in turn was wholly owned by Arch P. Pettit. The defendant Arkansas Kitchen Center, Inc., commenced to issue its billings in January 1980, to "La Pettit Roche" as well as to "Thomas Coyne and Lynn Janssen." And in early March 1980, the petitioners Coyne and Janssen made it clear to Mr. Humphries that their orders were being given on the credit of the corporations owned by Mr. Pettit and pursuant to Mr. Pettit's specific instructions. Mr. Humphries denies that the information which was then imparted to him was that specific, and states that he was only informed that Mr. Pettit was a "backer" of the enterprise. But the testimony of his employee, Cecilia Trouppoli, was to the effect that Mr. Humphries returned from this meeting very upset and agitated, evincing a state of mind unlikely to be induced by the simple revelation that an additional backer was involved.[3] And, otherwise, Mr. Humphries states in his testimony that he

---

1. These contentions are set out at some length in the complaint for relief which has been filed by the plaintiffs.

2. The plaintiffs appeared personally and by counsel for the hearing. The defendant Arkansas Kitchen Center, Inc., appeared by Thomas L. Humphries, its president, and by Ed Moody, Esquire, its counsel. The debtors appeared by Isaac A. Scott, Jr., Esquire.

3. If only an additional backer was mentioned, it appears that this would be favorable information. But what appears to have happened is that the plaintiffs at this time disclaimed any personal liability for debts to the Arkansas Kitchen Center, Inc.

"doesn't know" why he had begun to render bills to "La Pettit Roche," and it appears that, in the absence of an intelligible explanation, the only palpable reason for this billing is that he knew that he was dealing with La Pettit Roche, a corporation which is now one of the debtors in this chapter 11 proceeding.

It was subsequent, furthermore, to this conversation in March 1980 that the improvements which provide the basis for the state court action were requested to be made and completed.[4] The bill requesting payment therefor was rendered by Arkansas Kitchen Center, Inc., to "La Pettit Roche."[5]

The sum due is $1,560.72. The improvements effected remain on the premises owned by the debtor Arch P. Pettit at 313 Main Street.

## II

## CONCLUSIONS OF LAW

■ The above and foregoing findings compel the conclusion that the debt which provides the subject of this proceeding and the state court proceeding is one of the corporation, La Pettit Roche. The plaintiffs, as officers and agents of that corporation, with respect to the particular indebtedness here in suit, dealt with Arkansas Kitchen Center, Inc., on account of La Pettit Roche and explicitly revealed the existence and status of La Pettit Roche as principal to the president and managing officer of Arkansas Kitchen Center, Inc. Under the general law ordinarily applicable to corporations, there is no provision for the liability of individual corporate officers in such circumstances. It is apothegmatic that officers are not ordinarily liable for corporate debts. "The directors or officers of a corporation are not from their status as such alone personally liable for its debts or undertakings, in the absence of a constitutional, statutory, or charter, provision imposing liability . . . or of an agreement on their part to become liable . . ." 19 C.J.S. Corporations § 839, pp. 262–3 (1940). No such constitutional or statutory provision or contractual agreement has been evidenced or adverted to in the action at bar. Otherwise, to create liability on the part of a corporate officer or director, the liability must be created, generally speaking, by the tortious act of the officer or director. "A director, officer, or agent is liable for the torts of the corporation or of other directors, officers, or agents when, and only when, he has participated in the tortious act, or has authorized or directed it, or has acted in his own behalf, or has had any knowledge of, or given any consent to, the act or transaction, or has acquiesed in it when he either knew or by the exercise of reasonable care should have known of it and should have objected and taken steps to prevent it." *Id.*, § 845, pp. 272–3. Such statutory liability as corporate officers may incur[6] under state law may not apply when the federal, not state, law applies. In one bizarre case, *In re Whitlock*, 449 F.Supp. 1383 (W.D.Mo.1978), it was held, contrary to applicable state law, that a corporate officer is not liable for corporate debts created by his own tortious act.[7] And no authority

---

4. The testimony is uncontradicted to the effect that the repairs and improvements which are the subject of the action at bar were made after the "afternoon" conversation, as it is referred to by Mr. Humphries, in March 1980.

5. More precisely, the written bill of March 14, 1980, is to "Tom Coyne & Lynn Janssen—La Petite Roche."

6. It appears that Arkansas may have a state law making corporate officers liable for negligence or mismanagement, but, to date, no assertion has been made that the law is applicable to this action.

7. "Without the presence of evidence showing that the bankrupt-officer obtained some illegitimate benefit from his position, the debts remain those of the corporation." 449 F.Supp. at 1388. As is noted in the text, this aphorism is contrary to the Missouri law on the subject, and to Kansas law (which might otherwise have been applicable in the *Whitlock* case), other federal cases, and the law generally. But it may have controlling effect in the action at bar in which the conduct of the plaintiffs is not shown to have reached the dimension of constituting a tort.

has been cited which would make the corporate officer or employee liable for corporate debts in a situation such as that at bar, which involves no tort and a full and fair opportunity for Arkansas Kitchen Center, Inc., to recover the debt through these chapter 11 proceedings. "There is simply no basis for allowing corporate debts to be asserted against an individual officer in this situation." *In re Whitlock, supra,* at 1389.

■ Even if it were true that the incurring of the indebtedness involved some tort or other happenstance which would possibly make the plaintiffs jointly and severally liable for the debt which is the subject of the state court action,[8] the holding in *In re Whitlock, supra,* is that, absent a personal gain or benefit to the corporate officers or employees, no personal liability can be imposed on them.[9] In this action, the uncontradicted testimony of the plaintiffs was to the effect that the debtors received all the benefit from the installation of the improvements which form the basis of these actions. For those improvements remain on the premises of the debtor and, although the plaintiffs inhabit the apartment in which the improvements are located, they have traded their services as caretakers as the equivalent in value for being permitted by the debtor to inhabit the apartment. Thus, they have received no "gain" or "benefit" within the meaning of *In re Whitlock, supra.*

■ Finally, even if there is some joint and several liability on the part of the plaintiffs (and, for the foregoing reasons,

this court holds that there is not), the relationship between the plaintiffs and the debtors which continued through the time of Arkansas Kitchen Center's filing of the state action was one whereby some connection of principal and agent was retained. For, as noted above, the plaintiffs continued to inhabit the premises on which the improvements were installed up to and through the inception of these chapter 11 proceedings. Under the prior decision of the district court in *First Federal Savings and Loan Association of Little Rock v. Pettit,* 12 B.R. 147 (E.D.Ark.1981) such a relationship might well be a source of "pressure" upon the reorganization proceedings (as, indeed, this action itself evidences) if the Arkansas Kitchen Center, Inc., were allowed to proceed against the alleged "codebtors."[10] For this separate and independent reason, therefore, it is concluded that injunction against further prosecution of the state court proceedings is warranted.

The indebtedness of the debtors to the Arkansas Kitchen Center, Inc., is scheduled as a "disputed" debt. According to the terms of the confirmed plan of reorganization, "disputed" debts were required to be the subject of action taken timely by the affected creditor or the claim would be barred as against the debtors.[11]

It would appear that, in apparently not taking the action to relieve the dispute against their claim and in not seeking relief from the automatic stay, the Arkansas Kitchen Center, Inc., may have forfeited its right to have its claim allowed against the chapter 11 estate. If so, that would act

---

8. See note 7, *supra.*

9. See note 7, *supra.*

10. It was the theory behind the decision of the district court in the *First Federal Savings and Loan Association of Little Rock* case that some degree of relationship between the debtor and codebtor may warrant the court in enjoining the proceedings to collect from codebtors in a nonbankruptcy court. The principle applied in that proceeding appears to have possible applicability in this action in which the defendant Arkansas Kitchen Center, Inc., appears deliberately to have foregone its opportunity to utilize

these reorganization proceedings for collection of the debt in favor of bringing the state court action. Obviously, by reason of this proceeding, this has created "pressure" on the reorganization proceedings.

11. In this regard, the plan of reorganization which was approved and confirmed by the court provides as follows: Disputed claims shall "receive no payment," unless "such claims have . . . been approved and allowed by the Court as members of another class on the Effective Date (of the plan)."

independently as a discharge of the indebtedness so as to prohibit collection from the codebtors.[12]

### III

For the foregoing reasons, the court issued its order on May 27, 1981, directing the parties to show cause in writing why judgment should not be entered enjoining further prosecution in the state court action and barring Arkansas Kitchen Center's claim in these reorganization proceedings.

The respondent Arkansas Kitchen Center, Inc., filed its response to the show cause order on June 10, 1981. In that response, none of the material findings of fact made above by this court are effectively denied.[13] Otherwise, it is argued in the brief that, "[s]ince the corporation by approval of its Board of Directors and Shareholders never adopted the liabilities of its promoters, Petitioners cannot evade personal liability for the debt." But the foregoing facts clearly demonstrate that the services and goods for which payment is now sought were rendered and conferred not only after incorporation, but after the principal officer of Arkansas Kitchen Center knew of the existence of that corporation, as well as of the petitioner's status as its agents and of the corporation's liability for the work to be done. The court has above specifically found that Mr. Humphries was told these facts in March 1980, before he undertook to perform the work for which charges are now sought to be exacted. Accordingly, the authorities now cited and relied upon by Arkansas Kitchen Center, Inc., are inapposite.[14]

It is further argued, however, that, in the conversation of March 1980, "Petitioners didn't tell Respondent that Pettit was a shareholder but a 'financial backer' of La Pettit Roche." Use of the words "financial backer" in the March 1980 conversation, however, has little, if any, significance when the evidence demonstrates that, during this conversation, the petitioners clearly informed Mr. Humphries that La Pettit Roche, one of the debtors in these reorganization proceedings, was in existence and would be liable for the work subsequently undertaken.[15]

Next, the respondent argues that "[b]oth the Debtor and the Respondent [Arkansas Kitchen Center] believed that the debts incurred at 313 Main, due to work by Respondents understandably sought judgment against the Petitioners." There is absolutely nothing in the evidence to support this factual contention. But even if it were so, the "belief" of the debtors and the respondent can hardly control this issue. The facts demonstrate that the petitioners acted with corporate authority in incurring the expenses and that the work accomplished

---

**12.** See § 1141(d)(1)(A) to the effect that "the confirmation of a plan ... discharges the debtor from any debt that arose before the date of such confirmation ... whether or not ... a proof of claim based on such debt is filed or deemed filed ..."

**13.** The defendant Arkansas Kitchen Center, Inc., urges in response to the show cause order "that Petitioners were promoters and that La Pettit Roche, Inc. never adopted the original contract or modifications thereto by proper corporate resolution" and that, therefore, "the promoters liability continued since the corporation never adopted the debt." But no evidence is adverted to which can support this contention, nor is any legal authority cited in support of the applicability of the term "promoters" to the petitioners. To the contrary, all the evidence in this action shows that the petitioners were acting as agents and employees of the corporation with explicit power from the president of La Pettit Roche to bind the corporation.

**14.** See note 13, *supra*. The only authority cited in the response of the defendant Arkansas Kitchen Center, Inc., to the show cause order is the definition of "promoter" from "S.E.C. Rule 405, 17 C.F.R. section 230.405(q)(1)" as "a person who, acting alone or in conjunction with one or more other persons, directly or indirectly takes (the) initiative in funding and organizing the business or enterprise of an issuer." This consideration is simply immaterial for the reasons stated elsewhere. See note 13, *supra*.

**15.** And, as noted above, see note 13, *supra*, the evidence further shows without contradiction that the petitioners had express authority from the corporate president to bind the corporation.

conferred a benefit on the corporation, La Pettit Roche.

The respondent Arkansas Kitchen Center, Inc., also complains of the court's joining the debtors as "respondents in this action thus evidencing the confused relationship of the parties." This alignment of the parties, however, seemed appropriate to the court in view of the petitioners' seeking at once to avoid suit by or liability in favor of the Arkansas Kitchen Center, Inc., and also to fix the same liability on the debtors. It does not seem to have represented or reflected any "confused relationship of the parties."

For the foregoing reasons, the contentions of the Arkansas Kitchen Center, Inc., must be denied. The conclusions of law stated in Part II, *supra*, must accordingly be regarded as controlling.

### IV

Finally, in respect to the issue of whether any liability of the chapter 11 estate should be barred for failure timely to file a claim in these chapter proceedings, the Arkansas Kitchen Center, Inc., argues as follows:

> "If the Court finds that the debt was that of the Debtor corporation, then it should be paid as a priority administrative expense since the improvements were necessary for use by the co-debtor in managing the property for the preservation of the estate or as a statutory mechanics lien under Arkansas law. If the Court does not permit the Respondent to be paid, assuming the Order is issued as proposed, Respondent will not have been paid for its work despite its good faith belief that the Debtor and itself believed that the debt was of the Petitioners."

As noted above, however, there is no evidence of this "belief" and, furthermore, it is not relevant to a determination of the issues in this case. Whatever the equities in this situation, the court has no power—except for governmental claims—to extend the time for filing claims in a case under title 11.[16] And the equities are certainly not all in one direction in this action, wherein the evidence shows that the Arkansas Kitchen Center, Inc., with notice of the chapter 11 proceedings and their status as a potential claimant, spurned the opportunity to file any claim, or even a complaint for relief from the stay, in this court and instead sought to collect from the debtor's agents in a state court when adequate investigation should have shown that the debt was that of one of the debtor corporations.

### V

It is therefore, for the foregoing reasons,

ORDERED, ADJUDGED, AND DECREED that the defendant Arkansas Kitchen Center, Inc., be, and it is hereby, restrained and enjoined from further prosecution of its action against Thomas Coyne and Lynn Janssen in any other court except the bankruptcy court. It is further

ORDERED that the claim of the respondent Arkansas Kitchen Center against the debtors herein be, and it is hereby, time-barred.

---

16. "A claim must be filed within 6 months after the date first set for the first meeting of creditors." Rule 302(e) of the Rules of Bankruptcy Procedure. The files and records in this case show that the date first set for the first meeting of creditors was more than six months ago, August 25, 1980. Rule 11–33(b)(2) provides that a claim in a chapter 11 case must be filed before confirmation of the plan. Confirmation of the plan has also long since been accomplished.